VILLAGE OF BOLIVAR v. PITTSBURG, S. & N. R. CO. et al.

(Supreme Court, Appellate Division, Fourth Department. November 17, 1903.)

1. RAILROADS—CHANGE OF ROUTE—GRADE CROSSING—APPLICATION TO COMMISSION—NECESSITY.

Section 60 of the railroad law (Laws 1890, p. 1082, c. 565, as amended by Laws 1897, p. 794, c. 754) provides that railroads must be so constructed as to avoid grade crossings, if practicable. It also provides for proceedings before the Railroad Commissioners to determine the grade where an application is made under section 59 (Heydecker's Gen. Laws, p. 3287, c. 39) for a certificate permitting a corporation to build a road, and further provides for application "under this section" to determine the manner of crossing. *Held* that, while the provision as to proceedings

under the clause relative to section 59 refers only to new roads, the latter clause refers to roads already constructed, and necessitates a determination by the Railroad Commissioners that a crossing above or below grade is impracticable, before a road already constructed can change its route so as to cross a village street at grade.

2. SAME — APPROVAL BY COMMISSION — NECESSITY — APPROVAL BY VILLAGE TRUSTEES OR BY COURT—EFFECT.

Under section 60 of the railroad law (Laws 1890, p. 1082, c. 565, as amended by Laws 1897, p. 794, c. 754), necessitating a determination by the Railroad Commissioners that a crossing above or below grade is impracticable, before a crossing at grade can be made, such a determination must be made by the commission, and cannot be made, or such a crossing consented to or ordered, by the trustees of a village or the court.

3. SAME—ESTOPPEL—ACTION OF VILLAGE TRUSTEES.

A village cannot be estopped, by the action of its trustees in approving of the change of route of a railroad within the village, from objecting to the construction of the road over the village street at grade without the authority of the Railroad Commissioners, required to be given by section 60 of the railroad law (Laws 1890, p. 1082, c. 565, as amended by Laws 1897, p. 794, c. 754).

4. INJUNCTION—ADEQUATE REMEDY AT LAW.

A village has no adequate remedy at law for the construction of a railroad over its main street at grade without approval of the Railroad Commissioners, when one-fourth of the expense of a subsequent change of the route, on its application to the railroad commissioners for such a change, would fall on it.

Appeal from Special Term, Allegany County.

Action by the village of Bolivar against the Pittsburg, Shawmut & Northern Railroad and another. From an order vacating a preliminary injunction, plaintiff appeals. Reversed.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, HISCOCK, and STOVER, JJ.

E. M. Worth and D. Mellville Page, for appellant.
Frank S. Smith, for respondents.

WILLIAMS, J. The order appealed from should be reversed, and the motion to vacate injunction be denied.

The question involved is the right of the defendants to build their railroad across Main street, in the village of Bolivar, Allegany county, at grade. The action was brought to restrain such construction, without first obtaining a determination by the Board of Railroad Commissioners that it was impracticable to build over or under the highway.

The Allegany Central Railroad Company was incorporated in 1881, and during that and the subsequent year constructed a narrow-gauge railroad between Olean and Angelica, through the village of Bolivar. That road did not cross Main street, in the village of Bolivar, at all. It was operated for some years after it was built on the original route between Olean and Angelica, but about 15 years ago the portion of the road between Bolivar and Angelica was torn up, the rails thereof removed, and the road was abandoned, and has never since been operated. The title of Allegany Central Railroad Company to this road, by various consolidations and mergers, finally became vested in the defendant railroad company upon its organization, in August, 1899. In June, 1902, the defendant railroad company took

proceedings under chapter 267, p. 492, Laws 1891, to change the
gauge of the railroad, and such change was made. It also took pro-
ceedings under section 13 of the railroad law (Laws 1890, p. 1088, c.
565) for the change of its route, and such change was made; the new
route through the village of Bolivar crossing Main street at the place
in question. A map, survey, and profile of the proposed change was
filed in Allegany county clerk's office June 2, 1902, and the alteration
within the village of Bolivar was approved by a vote of two-thirds of
the trustees of the village June 18, 1902. The defendant railroad com-
pany applied at a Special Term of the Supreme Court, November 7,
1902, for an order permitting the railroad company to construct its
road upon the altered route across the streets and highways of the
village of Bolivar, including Main street. The village was heard upon
that application, and the order applied for was made. The railroad
communicated with the Railroad Commissioners with reference to
this crossing on Main street, and the board replied that they did not
feel called upon to act with reference thereto. The railroad was pre-
paring to complete the crossing by its road at Main street at grade,
when, April 17, 1903, this action was commenced, and the injunction
in question was issued and served. The order appealed from vacated
that injunction.

The plaintiff claims that the piece of railroad in question is within
the provisions of section 60 of the railroad law (chapter 565, p. 1082,
Laws 1890, as amended by chapter 754, p. 794, of the Laws of 1897),
which reads as follows:

"Sec. 60. All steam surface railroads hereafter built, except additional
switches and sidings, must be so constructed as to avoid all public crossings
at grade whenever practicable so to do. Whenever application is made to the
Board of Railroad Commissioners under section 59 of the railroad law, there
shall be filed with said board, a map showing the streets, avenues and high-
ways proposed to be crossed by the new construction, and the said board
shall determine whether such crossing shall be under or over the proposed
railroad, except when said board shall determine such method of crossing to
be impracticable. Whenever an application is made under this section to
determine the manner of crossing, the said board shall designate a time and
place when and where a hearing will be given to such railroad company, and
shall notify the municipal corporation having jurisdiction over such streets,
avenues or highways proposed to be crossed by the new railroad. The board
shall also give public notice of such hearing in at least two newspapers pub-
lished in the locality affected by the application, and all persons owning land
in the vicinity of the proposed crossing shall have the right to be heard.
The decision of the said board rendered in any proceedings under this section
shall be communicated, within 20 days after final hearing, to all parties to
whom notice of the hearing in said proceedings was given, or who appeared
at said hearing by counsel or in person."

The defendants claim this piece of railroad is not within the pro-
visions of this section; that the section only applies to railroads there-
after built by railroad corporations thereafter formed. The reason
urged for this construction is the assumption that the railroad com-
missioners can only be called upon to act as to the manner of crossing
where an application is made under section 59 of the law (Heydeck-
er's Gen. Laws, p. 3287, c. 39), and that can only be done as to cor-
porations thereafter formed. This assumption is not authorized by
the language of section 60. It is based upon the language of the sec-

ond clause of the section, which does refer to section 59, and which is not applicable to this piece of railroad, because no application here could be made under section 59. The third clause of section 60 is, however, applicable to this piece of road. It is as follows:

"Whenever an application is made under this section, to determine the manner of crossing, the said board shall designate a time and place," etc.

The application under section 59 is for a certificate, permitting the corporation to exercise its powers and to build its road. It in no way relates to the manner of crossing highways. And then the second clause of section 60 provides that, when the application for the certificate under section 59 is made, the board shall also determine the manner of crossing highways by such new road to be constructed. The third clause provides for cases where the application is made not for the certificate under section 59, but directly under section 60 for the determination of the manner of crossing highways. These two applications are distinct and separate, but the procedure under both sections, as to the determination of the manner of crossings after the making of the application themselves, is to be the same, and is provided for in the latter portion of section 60. This we believe to be the proper construction of these sections. While there is no defense provision in either section 59 or section 60 that an application shall be made to the Board of Railroad Commissioners to determine the manner of crossings, yet section 60 assumes that an application shall be made, and that the board shall thereupon determine the question.

It is not claimed that the piece of railroad in question is either an additional switch or siding of the railroad, and therefore excepted under the provision of section 60. It is therefore within the prohibition against constructing the same at grade until an application is made to the Board of Railroad Commissioners, and they determine a crossing over or under the highway is impracticable.

It being settled that the piece of railroad is within the provision of section 60 of the railroad law, the defendant railroad company had no right to construct its road across Main street at grade until the Board of Railroad Commissioners had determined as to the manner of crossing, and that a crossing above or below the street was impracticable. This statute was enacted for the benefit of the public at large, and neither the village trustees nor the court could directly or indirectly determine the question, or consent to or order a grade crossing. Nor could the village be estopped by any action of its board of trustees from objecting to the building of the road otherwise than as provided by the statute. The approval by the village trustees of the change of route of the railroad was made in compliance with the statute as to such change of route, and the order of the court was also made in compliance with the statute, but neither such approval nor order had any reference to the manner of crossing the street in question. The provision of the statute under which such approval and order were made in no way related to the manner of crossing the streets of the village. The sole power to determine that question rested with the Board of Railroad Commissioners, under this section 60 of the railroad law. It is suggested that the village had an ade-

quate remedy under the statute after the road was built across the street, by application to the Board of Railroad commissioners to change the crossing to one over or under the street. This is hardly true. In case of such subsequent application the expense of the change would fall one-quarter upon the village and one-quarter upon the state, and only one-half upon the railroad company, while, if the manner of crossing is determined before the road is built, the whole expense falls upon the railroad company.

We think there was no adequate remedy to protect the village and the public, except the injunction granted by the county judge.

We conclude that the order appealed from should be reversed, with $10 costs and disbursements, and the motion to vacate injunction be denied, with $10 costs. All concur.